PLEASE FILE
IN RECORD

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 DEC -8  AM II: 03

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KIRK RICHARD | * | CIVIL ACTION |
| | * | NUMBER 00-0058 |
| VERSUS | * | SECTION B MAG 2 |
| ARNOLD TRANSPORTATION SERVICES, ET AL | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRE-TRIAL ORDER

I.    A Pre-Trial Conference was held in this matter before the Honorable Ivan L. R. Lemelle

of the United States District Court, Eastern District of Louisiana, on Wednesday, December 6,

2000, at 3:00 p.m., at New Orleans, Louisiana.

II.    **APPEARANCES OF COUNSEL:**

| | | |
|---|---|---|
| a) | Attorneys for Plaintiff, Kirk Richard | **SHEARMAN - DENENEA, L.L.C.** Brian G. Shearman, T.A. (#19151) John H. Denenea, Jr. (#18861) 829 Baronne Street New Orleans, Louisiana 70113 Telephone: (504) 581-9322 |
| b) | Attorneys for Defendants, Arnold Transportation Services and Roy Skidmore | **CHAFFE, McCALL, PHILLIPS TOLER & SARPY, L.L.P.** John F. Olinde, T.A. (#1515) Brent A. Talbot (#19174) Douglas R. Holmes (#23996) 2300 Energy Centre 1100 Poydras Street New Orleans, Louisiana 70163-2300 Telephone: (504) 585-7000 |

DATE OF ENTRY
DEC 0 8 2000

Fee_____
Process_____
X  Dktd_____
____ CtRmDep_____
Doc.No._____

c)    Attorneys for Defendant,    **LEMLE & KELLEHER, L.L.P.**
        Canadian National/Illinois    David S. Kelly, T.A. (#7703)
        Central Railroad Company    Timothy F. Daniels (#16878)
                                 Robert S. Emmett (#23725)
                                 21st Floor, Pan-American Life Center
                                 601 Poydras Street
                                 New Orleans, Louisiana 70130
                                 Telephone: (504) 586-1241

d)    Attorney for Intervenor    **MICHAEL HINGLE & ASSOC., INC.**
        Michael Hingle/Guy Huard/    W.M. Hingle
        Blaine Barrilleaux    P. O. Box 1129
                                 220 Gause Blvd.
                                 Slidell, Louisiana 70459
                                 Telephone: 641-6800

## III.   DESCRIPTION OF THE PARTIES:

a)    <u>By complainant, Kirk Richard</u>

        Kirk Richard is a person of the full age of majority and a resident of
        the Parish of St. Tammany Parish, State of Louisiana.

b)    <u>By defendant, Arnold Transportation Services, Inc. and Roy Skidmore(
        hereinafter the "Arnold Defendants"):</u>

        Defendant, Roy Skidmore, is a resident of Texas.  Defendant, Arnold
        Transportation Services, Inc. is a foreign business corporation doing business
        corporation doing business in Louisiana.

c)    <u>By defendant, Canadian National/Illinois Central Railroad Company</u>

        CN/IC is an interstate common carrier by railroad, incorporated under the laws of
        maintaining its principal business offices in the State of Illinois; it is a wholly
        owned subsidiary of the Canadian National Railway.  CN/IC was named as a
        defendant herein by supplemental complaint filed some eight months after
        commencement of the action; plaintiff's claims against it arise exclusively under
        the Federal Employers Liability Act, 45 U. S. C. § 51 *et seq.*  When it answered
        the complaint it asserted (1) a counterclaim against plaintiff to recoup out of his
        recovery from the tortfeasors Arnold Transportation and Roy Skidmore
        approximately $17,300.00 in medical benefits provided to plaintiff and to recoup
        $13,300.00 advanced or loaned to plaintiff as a result or the incident in suit, and
        (2) a cross-claim for delictual indemnity against the original defendants, Arnold
        Transportation, Inc. and Roy Skidmore, whose liability to plaintiff arises under

Louisiana state tort law. CN/IC is self-insured for the liability asserted against it herein.

d)     By Intevenor, Michael Hingle and/or Michael Hingle & Associates

Intevenor, Michael Hingle, a person of the full age of majority and a resident of St. Tammany Parish, LA and/or Michael Hingle & Associates, LLC, a corporation authorized to do and doing business in the State of Louisiana, has intervened for recovery of fees/loans/costs and expenses incurred in the handling of this case prior to being discharged without cause by plaintiff, Kirk Richard.

## IV.    JURISDICTION

This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C.

Section 1332, otherwise known as diversity of citizenship, as well as federal question as to

CN/IC under the Federal Employers Liability Act, more commonly known as FELA.

## V.    MOTIONS PENDING OR CONTEMPLATED:

a)     By complainant, Kirk Richard:

Complainant does not intend to file any further motions in this case.

b)     By defendant, Arnold Transportation Services, Inc. and Roy Skidmore( hereinafter the

"Arnold Defendants"):

The Arnold defendants filed a motion to dismiss the cross-claims of CN/IC, which was

set for hearing on November 29, 2000, before Judge Lemelle. The Arnold defendants also filed

a Motion in Limine to exclude any reference to Roy Skidmore's termination of Arnold's finding

that this accident was preventable. This motion is set for hearing on December 13, 2000, before

Judge Lemelle. The Arnold defendants have also filed a Motion in Limine to Preclude CNIC's

expert witness, Robert A. MacRae. CNIC listed Mr. MacRae in violation of this Court's order,

and CNIC has never produced an expert report from Mr. MacRae. The Arnold defendants have

requested that Judge Lemelle hear this motion at the pre-trial conference.

CNIC filed a Motion to Designate Rebuttal Expert (Mr. MacRae), which is currently set by CNIC for hearing before Magistrate Wilkinson on December 6, 2000. The Arnold defendants have opposed said motion and suggest that said motion should be considered by this Court at the pre-trial conference. CNIC also has filed on December 1, 2000, an untimely motion to compel discovery responses against the Arnold defendants, and a motion for leave to take depositions.

c)    By defendant, Canadian National/Illinois Central Railroad Company:

CN/IC has filed a motion for leave to submit a liability expert's report beyond the Court's cutoff, which motion is pending. CN/IC has filed (or will have filed by the pre-trial conference date) a motion to compel Arnold Transportation and Roy Skidmore to provide more complete responses to its interrogatories and production requests and a motion for leave to depose several witnesses who were identified by Arnold Transportation and Roy Skidmore after the discovery "cutoff" set in the May 16, 2000 scheduling order. CN/IC contemplates filing a *Daubert* motion after it completes the deposition of Arnold Transportation's and Roy Skidmore's so-called liability expert, Franklyn O. Griffith, whose narrative report contains unsupportable and unscientific opinions respecting train braking dynamics and train braking performance. CN/IC anticipates filing a motion *in limine* to foreclose reference by its opponents herein to its alleged "spoilation" of evidence. It also contemplates filing a motion *in limine* to foreclose it opponents' use of records of other in-plant truck/train accidents occurring under other cirucumstances and at other times and sometimes at other places in the ostensible guise of proving CN/IC's "knowledge" of the risks of operating in the plant.

Pending against CN/IC is an ill-considered 12(b) motion to dismiss its delictual indemnity claim against Arnold Transportation and Roy Skidmore; CN/IC is opposing that motion. Also pending against CN/IC (and against plaintiff) is another meritless motion by

Arnold and Skidmore–this one to prevent any use against them of Arnold's post accident investigation reports and the fact of its termination of Skidmore for causing the otherwise "preventable" accident.

## VI.    A BRIEF SUMMARY OF THE MATERIAL FACTS CLAIMED BY:

a)    By complainant, Kirk Richard:

On or about September 25, 1999, plaintiff, Kirk Richard, was employed with defendant, Canadian National/Illinois Central Railroad Company.  He was working with two other employees of the Railroad, namely, Randy Pigott (conductor) and George Lawson (engineer). These three individuals were working at the Gaylord Plant located in Bogalusa, Louisiana.

Plaintiff, Kirk Richard, was caused to sustain serious injuries to his lower back and his left knee when the train on which he was riding collided with an 18 wheeler being operated by Roy Skidmore.  Roy Skidmore at the time of this accident was employed with Arnold Transportation Services, Inc.

It is plaintiff's position that the primary cause of this accident was the failure of the defendant, Roy Skidmore, to stop his vehicle at the intersection where the train crossed the roadway.  Mr. Skidmore's testimony confirms that he had an obligation to stop at the stop sign and wait for the train to clear the intersection.  Mr. Skidmore further confirmed that the train had the right of way and that it was his responsibility to yield the right away to the train.  The strongest evidence, implicating Mr. Skidmore for his negligence in this accident was the investigation conducted by Mr. Skidmore's employer, Arnold Transportation Services, Inc. Following their investigation, Mr. Skidmore was terminated as Arnold Transportation determined that the accident forming the basis of this lawsuit was preventable.

Plaintiff further submits that his employer, Canadian National/Illinois Central Railroad

Company, is also responsible for this accident. The testimony of Mr. Pigott and Mr. Lawson clearly reflect that the sole person on the train with the responsibility of watching for dangers is the conductor Randy Pigott. Mr. Pigott was located on the front of the first box car. He was essentially the "eyes of the engineer." The testimony of Mr. Lawson confirms that Mr. Pigott at no time gave any warnings of the oncoming 18 wheeler. As such, no evasive action was taken by Mr. Lawson. The failure of Mr. Pigott to perform his duties in a reasonable and safe manner demonstrates that the railroad's conduct contributed to the accident with the Skidmore 18 wheeler.

Finally, plaintiff submits that he is free from fault in this accident. Mr. Richard was located on the fifth box car on the opposite side of the train from which the 18 wheeler was approaching. Mr. Richard could not see the oncoming 18 wheeler, had no duty to watch for such oncoming traffic, and as such, could not in any way have alerted Mr. Lawson to the impending danger.

As a result of this accident, plaintiff, Kirk Richard, sustained injuries to both of his knees, lower back, and jaw. He was taken on the same day of the accident by his superiors to a hospital in Bogalusa for emergency medical treatment. He was discharged from the hospital with a recommendation that he follow up with a medical doctor.

Mr. Richard's medical care continued with Dr. Vaclav Hamsa, Dr. Bruce Razza, Dr. Kenneth Vogel, and Dr. Paul Watters. Mr. Richard underwent two separate surgical procedures, an arthroscopic knee surgery as well as a three level neurotomy in his lower back.

Mr. Richard has just recently been discharged by Dr. Kenneth Vogel and has returned to work with his employer, Canadian National/Illinois Central Railroad Company.

Mr. Richard has incurred medical expenses totaling $43,464.65. He also has incurred

wage loss totaling approximately $43,000.00.

b)    By defendant, Arnold Transportation Services, Inc. and Roy Skidmore( hereinafter the

       "Arnold Defendants"):

On September 25, 1999, a Canadian National/Illinois Central Railroad (CNIC) train

collided with an Arnold Transportation Services tractor-trailer driven by Roy Skidmore.  The

collision took place at a rail crossing within the Gaylord Container Corporation paper mill in

Bogalusa, Louisiana.  The CNIC train was eighteen cars long and was involved in a shoving

movement, meaning that an engine was pushing 18 cars from behind them, at the time of the

accident.  The CNIC train traveled 200 feet after the impact with the tractor-trailer.  The

plaintiff, an employee of CNIC, was riding on the outside of the fifth car and claims that his

body hit against the car at impact.  He repeatedly denied injury at the scene and did not complain

of injuries until hours later.

The conductor of the CNIC train was positioned on the front side of the lead boxcar

before the accident.  The engineer, who was operating the train, could not see the crossing and

was relying upon the conductor as his "eyes and ears" to make sure the crossing was clear and

that it was safe to proceed.

The crossing itself was poorly designated, very confusing, and dangerous since there

were several parallel tracks at the crossing, and each track had a stationary line of boxcars on it.

There have been a number of accidents at the same crossing.  A blue light and siren were

positioned on a pole near the crossing and were supposed to be turned on manually by the CNIC

employees when trains were moving over the crossing.  However, the CNIC employees did not

turn on the blue light and siren before this incident occurred.

The locomotive was equipped with a bell and a horn.  Neither the bell nor the horn were

operated prior to the movement over the crossing in this incident. CNIC provided no flagman at the crossing even though it was heavily traveled by motor vehicles. Either CNIC or Gaylord Container Corporation (who is not a party and is the owner of the crossing) should have provided additional, active warnings at the crossing.

Roy Skidmore, the driver of the tractor-trailer, stopped well in advance of the crossing, saw the train, believed that it was stationary and then proceeded across the tracks. The CNIC conductor disputes this, but has said that the CNIC train was proceeding at five miles per hour. The plaintiff has said the train was exceeding the ten mile per hour speed limit. Despite the conflicting stories of the CNIC employees as to the speed of the train, the plaintiff and the CNIC engineer agree that no warning was given by the conductor that a train-trailer was in or approaching the crossing, or of the impending accident, even though the conductor saw it coming. If the conductor had maintained a proper lookout, and if proper communications between the conductor and engineer had occurred, the accident would not have happened.

With respect to damages, the plaintiff remained at the scene for approximately two hours after the accident. He complained of no one at the scene that he was injured, and he in fact denied injury when questioned. Several hours later when he returned to CNIC's yard, he first claimed injury. He was seen at the emergency room in Bogalusa and released that same night. Later that evening, after seeing a commercial on television, the plaintiff contacted Michael Hingle and hired him. From that day on, he has been treated exclusively by doctors to whom he was referred by his several attorneys.

He saw Dr. Hamsa and Dr. Razza for less than five months. Dr. Razza performed arthroscopic surgery on plaintiff's right knee on February 2, 2000. When the plaintiff switched lawyers, he also switched doctors. In late February 2000, the plaintiff was sent to Dr. Vogel,

who started to treat plaintiff's back. Dr. Vogel performed a lumbar medical branch neurotomy (

a procedure that apparently only Dr. Vogel performs locally) on July 26, 2000. In September

2000, Dr. Vogel released the plaintiff to go back to work. In October, 2000, the plaintiff

returned to work.

An independent medical examination was performed by Dr. David Aiken on October 2,

2000. Dr. Aiken found no objective evidence that the plaintiff was injured. MRI's and X-rays

of plaintiff's neck, back and both knees revealed no evidence of injury and were completely

normal, except for old injuries to plaintiff's back clearly from prior accident. Dr. Aiken found

the plaintiff to be suffering no ill effects from his reported accident on September 25, 1999, and

that plaintiff required no medical care.

c)    By defendant, Canadian National/Illinois Central Railroad Company:

Defendant/cross-claimant/counterclaim CN/IC alleges the September 25, 1999 train/truck

collision and any injuries sustained by plaintiff Kirk Richard as a consequence were caused

solely and exclusively by the fault and negligence of the trucker, Roy Skidmore, who ignored a

stop sign, failed to stop an drove his empty 18 wheeler directly into the path of CN/IC's plainly

visible approaching train.

The collision occurred within the Gaylord Container Corporation plant in Bogalusa,

Louisiana at about 11:30 a.m. on the date aforesaid. The weather was clear and mild and played

no part in the incident. Just prior to the accident CN/IC's crew, including conductor R. E. Pigott,

locomotive engineer G. B. Lawson and brakeman K. A. Richard (plaintiff herein), was shoving

an 18 car cut northward through the plaint in order to deposit 5 partially loaded boxcars inside a

loading facility at Gaylord's request. The train was at all times operated within "Restricted

Speed" (i.e. at 10 mph or less). Conductor Pigott rode on the front corner of the boxcar leading

the movement so that he could direct engineer Lawson's operation of the train via radio; for this move the engine was on the rear of the train, over 1000 feet away from the leading boxcar on which conductor Pigott was riding, pushing 18 cars (9 of which were empty, 9 of which were partially loaded) Brakeman Richard rode the train on the 5th car behind the lead, as he was to disconnect the five lead cars from the rest of the train once they were properly positioned within the loading facility. The operation of the train was at all times reasonable and prudent and within all applicable rules and policies of the CN/IC.

As the slow-moving train neared a gravel road crossing within the plant, conductor Pigott observed an 18 wheeler moving southward on a roadway paralleling the railroad tracks on the west at a modest rate of speed. As the truck did not appear to be out of control , nor was it even certain the truck driver intended to turn eastward to traverse the tracks at the gravel crossing, conductor Pigott did not interdict the movement. The trucker did turn left in front of the train, however, and he did not stop before crossing the tracks–despite the fact Gaylord had installed both a standard reflectorized cross-buck sign and a stop sign to alert motorists within the plant of the crossing and the risk of approaching trains.

Once he realized the truck driver was not going to stop his vehicle and let the train pass safely, so that a collision was inevitable and eminent, conductor Pigott radioed his engineer to stop the train, then he stepped off the train to avoid being crushed between the vehicles. On receiving the radio instruction to stop the train engineer Lawson immediately applied the engine's independent brake valve, resulting in the quickest application of maximum braking force on the locomotive wheels. Because the train was being operated within a plant and was performing switching work, there were no air brakes on the 18 cars the engine was shoving. Given the mass and velocity of the train and the time required to achieve maximum braking, it

was impossible for the train to stop or even to slow enough to allow the truck to clear.  The train

collided with the trailer and shoved it ahead of the decelerating cars, which traveled about 200

feet before stopping.

As a result of the collision, Kirk Richard was jostled about, and he was either knocked

off of the car on which he rode or jumped off.  He claims he hurt his left knee and back in the

accident.  The nature and extent of his accident related injuries are controverted.  CN/IC did pay,

through May of 2000, approximately $17,300.00 for medical care and treatment for Kirk

Richard; it also lent him (advanced to him) the sum of $13,000.00.

d)      By Intevenor, Michael Hingle and/or Michael Hingle & Associates

On the 26th day of September, 1999, the intervenors began providing legal services to the

petitioner herein to the extent of the value of the legal services rendered and medical expense,

loans and other costs and expenses advanced to petitioner and desire to claim that amount out of

any recovery made by the petitioner herein.

## VII.    A SINGLE LISTING OF ALL UNCONTESTED MATERIAL FACTS:

1.    On September 25, 1999, an accident occurred between an 18 wheeler being
operated by Roy Skidmore and a train owned by Canadian National/Illinois
Central Railroad Company.

2.    That Roy Skidmore was acting in the course of scope of his employment with
Arnold Transportation Services, Inc. at the time of this accident.

3.    At the time of this accident, Kirk Richard was employed with Canadian
National/Illinois Central Railroad Company.

4.    The plaintiff was the brakeman on a CNIC train that collided with a truck and
trailer driven by Roy Skidmore on September 25, 1999.

5.    Randy Pigott and George Lawson were in the course and scope of their
employment with CNIC at the time of the incident.

6.    CNIC was pushing eighteen boxcars with a locomotive in the Gaylord Container

Plant in Bogalusa, Louisiana at the time of the incident.

7.      The CNIC locomotive was equipped with, but did not use, its bell or horn.

8.      CNIC did not use a flagman at the crossing.

9.      CNIC did not activate the blue light and siren at the crossing.

10.     CNIC did not download the event recorder in the locomotive.

11.     The status of Arnold Transportation Inc. as alleged in its answer;

12.     The status of Roy Skidmore as alleged in his answer;

13.     That Roy Skidmore was in the course and scope of him employment as a truck
        driver for Arnold Transportation when the collision in suit occurred;

14.     The status of CN/IC as alleged in its answer;

15.     That R. E. Pigott was a conductor in CN/IC's employ on the incident date and
        was in the course of scope of his employment when the collision in suit occurred;

16.     That Gaylord Container Corporation owned, maintained and controlled the
        railroad tracks, the gravel roadway and the paper plant in which the accident at
        issue occurred;

17.     That Gaylord Container Corporation installed and maintained all traffic control
        and warning signs within its plant;

18.     That the accident occurred in broad daylight.


VIII.   **A SINGLE LISTING OF ALL CONTESTED ISSUES OF FACT:**

1.      The negligence of the defendants;

2.      The cause of any accident or injury to the plaintiff;

3.      The nature and extent of plaintiff's alleged injury;

4.      The extent of the damages if any, to which the plaintiff is entitled.

5.      Whether any command was given by the conductor or the plaintiff to the engineer

        to stop the train before the collision.

6.    Whether the conductor or the plaintiff properly communicated with the engineer before the collision.

7.    Whether the train applied its brakes prior to the collision.

8.    Whether the crossing was poorly designed, confusing and dangerous.

9.    Whether the train could have avoided the collision.

10.    Whether the CNIC train was moving in excess of the speed limit.

11.    Whether the crossing's signs and warnings were inadequate.

12.    The extent to which the plaintiff was injured, if at all, as a result of the collision.

13.    Whether the plaintiff's surgeries were necessary as indicated.

14.    That no applicable statute, law, rule or regulation obliged the CN/IC train crew to sound a horn or whistle in connection with the shove move being made at the time the collision occurred;

15.    Kirk Richard did not immediately claim any injury following the accident.

16.    Kirk Richard returned to work for CNIC in October, 2000.

17.    That the engine bell and horn were–given the length of the train and the concomitant distance of the engine from the roadway–useless as warning devices for motorists approaching the subject crossing, particularly motorists operating 18 wheeler tractor trailer rigs;

18.    That the train at issue consisted of one switch engine and 18 cars, nine of which were empty and nine of which were partially loaded;

19.    That subsequent to the accident neither the investigating city police, nor the investigating city police, nor the investigating representatives of Gaylord Container Corporation nor any representatives of Arnold Transportation nor Roy

Skidmore asked that the engine's event recorder be downloaded so as to preserve the record of train speed it assumedly contained;

20.    That subsequent to the accident and while it was under investigation no one suggested that the train was being operated at any speed in excess of 10 mph;

21.    That Roy Skidmore violated Gaylord Container Corporation's inplant rules and regulations by failing to yield the right of way to CN/IC's train and his violation thereof caused the subject collision;

22.    That Roy Skidmore violated Arnold Transportation's rules and regulations by failing to yield the right of way to CN/IC's train and his violation thereof caused the subject collision;

23.    That Arnold Transportation investigated the subject collision and determined the accident was caused by the negligence of Roy Skidmore and would have been prevented if he had followed company rules and policy;

24.    That subsequent to its post accident investigation Arnold Transportation terminated Roy Skidmore's employment;

25.    That Roy Skidmore failed to stop and the stop sign and allow CN/IC's train to pass;

26.    That there were no obstructions to the view of Roy Skidmore along the railroad tracks on which the CN/IC train approached that could have interfered with his view of the approaching train.

27.    Whether the medical expenses were properly incurred and the amount of medical expenses.

28.    Gaylord and CNIC were on notice, due to multiple other accidents, that the

crossing was dangerous.

29.     That CN/IC is entitled to recoup out of plaintiff's recovery against Arnold Transportation and/or Roy Skidmore the $13,300.00 it loaned (advanced) to him as a consequence of the subject collision, and alternatively it enjoys a set-off for the said sum against plaintiff's economic loss claims;

30.     That CN/IC is entitled to recoup out of plaintff's recovery against Arnold Transportation and/or Roy Skidmore the medical benefits it has paid to and for him as a consequence of the injuries he sustained– which benefits CN/IC believes total approximately $17,300.00–and alternatively CN/IC enjoys a set-off for the said payments against plaintiff's recovery herein;

31.     Whether Roy Skidmore was guilty of negligence of other fault causative of the collision at issue;

32.     Whether any other party, including CN/IC (or its employees) and Gaylord Container Corporation, were guilty of negligence or other fault causative of the collision;

33.     Whether plaintiff sustained any compensable injuries as a result of the subject collision, and if so the sums to which he is entitled as damages;

34.     Whether Arnold Transportation and/or Roy Skidmore spoliated evidence–namely, photographs taken after the collision;

35.     Whether CN/IC spoliated evidence–namely the data on the locomotive's event recorder;

36.     Whether the "siren and flashing light system" this location (through not in the plant generally) had been disconnected by Gaylord Container Corporation prior to

the collision;

37.     Whether the train could have stopped or slowed appreciably at any time after it became apparent to conductor Pigott that the truck was not going to stop short of the tracks and yield the right of way to the train;

38.     All disputed facts reflected in the parties' respective summaries of material fact;

39.     The extent of any reimbursement to which intervenor is entitled.

40.     Whether or not intervenor was discharged without cause.

41.     Intervenor began providing legal services to plaintiff in connection with the accdient upon which plaintiff's suit is based beginning September 26, 2000.

42.     Plaintiff discharged intervenor February 4, 2000.

## IX.    A SINGLE LISTING OF ALL CONTESTED ISSUES OF LAW:

1.     Whether the accident and injuries were caused by the negligence of CNIC.

2.     Whether the accident and injuries were caused by the negligence of Kirk Richard.

3.     Whether the accident and injuries were caused by the negligence of Roy Skidmore .

4.     Whether the accident and injuries were caused by the negligence of Gaylord Container Corporation.

5.     Whether CNIC has a viable cause of action for contribution and/or indemnity against the Arnold defendants.

6.     Whether plaintiff's medical treatments is causally related to the accident.

7.     Whether Roy Skidmore's breach of Gaylord's in-plant rules and regulations constitutes negligence in this case;

8.     Whether Roy Skidmore's breach of Arnold Transportation's rules and regulations

constitutes negligence in this case;

9. Whether Roy Skidmore otherwise breached any legally recognized duty owed to plaintiff which was causative of the accident.

10. Whether CN/IC owed any duty to plaintiff to install and maintain roadway traffic control signs and warning devices on privately owned and maintained tracks;

11. Whether CN/IC owned any duty to sound the horn on its locomotive as it shoved the 18 car cut through Gaylord's plant at Restricted Speed;

12. Whether plaintiff's economic loss claims can be presented to the jury herein on a "gross wage" basis so long as plaintiff asserts FELA claims against CN/IC;

13. Whether the fact of and/or the reasons for Arnold's termination of Roy Skidmore's employment can be hidden from the jury (on the dubious theory it constitutes a "subsequent remedial measure") when Arnold asserts contributory negligence on Kirk Richard's part and claims actionable fault on CN/IC's part causative of the collision;

14. Whether CN/IC's opponents are entitled to an "adverse presumption" instruction on account of its failure to preserve event recorder data not considered relevant by any party at the time it could have been preserved;

15. Whether Arnold's and Skidmore's opponents are entitled to an "adverse presumption" instruction on account of their failure to retain photographs obtained at the accident scene by Roy Skidmore pursuant to Arnold's standing accident investigation policies;

16. Whether CN/IC's technical liability herein (under the "featherweight" standards of FELA), if any, gives rise to a legal or equitable right of indemnity under

Louisiana law against the party or parties actually at fault for the loss, or whether the Louisiana Legislature's 1996 attempt at tort reform was intended to let culpable parties enjoy a windfall when their cotortfeasor's liability arises under the substantive law of the United States;

17.    Whether O. Franklyn Griffith, and unqualified "expert" in accident reconstruction (whose opinion was expressed in a report first delivered after the expiration of the discovery deadline) will be allowed to express unscientific, unsupported and invalid opinions about train braking expectations and performance;

18.    All legal issues implicit in the parties' respective summaries of material fact and in their listings of contested factual issues.

## X.    EXHIBITS:

Defendants objections are either noted herein or in the attached email correspondence.

a)    By complainant, Kirk Richard

1.    Medical bills of Kirk Richard; (Arnold objects - authentication)

2.    Medical records of Kirk Richard;(Arnold objects - authentication)

3.    Accident report;

4.    Any and all photographs of the accident scene;

5.    Income tax information of Complainant, Kirk Richard; (Arnold objects, not produced)

6.    Any and all applicable insurance policies of the defendants; (Arnold objects, irrelevant)

7.    All deposition testimony;

8.    Any documents or exhibits listed by any other party.

b)    <u>By defendant, Arnold Transportation Services, Inc. and Roy Skidmore( hereinafter the "Arnold Defendants"):</u>

1.    Illinois Central Railroad Systems Operating Practices;

2.    Illinois Central Railroad Operating Rules;

3.    Illinois Central Gulf Railroad Damaged Car Report by J.A. Brumfield;

4.    Property loss report regarding incident prepared by Terry Pierce;

5.    Photographs taken at the accident scene by Dwight Arpin;

6.    Illinois Central Railroad Personal Injury Report on incident by Kirk Richard;

7.    Illinois Central Report of Highway Crossing Accident on incident;

8.    Illinois Central Report of Highway Crossing Accident involving Willie McNeal, dated September 25, 1999;

9.    Bogalusa Police Department report on incident;

10.    Accident report prepared by Gaylord/Vinson Security dated 11/17/99;

11.    Accident report prepared by Gaylord/Vinson Security dated 2/26/96;

12.    Accident report prepared by Gaylord/Vinson Security dated 8/25/98;

13.    Accident report prepared by Gaylord/Vinson Security dated 9/25/99;

14.    Accident report prepared by Gaylord/Vinson Security dated 9/18/2000;

15.    Independent Medical Examination report of Dr. David Aiken;

16.    The train consist or switch list at the time of the accident;

17.    Gaylord Container Corporation Bogalusa mill listing 9/25/99;

18.    Illinois Central timetable in effect at time of accident;

19.    Medical records and films of Dr. Bruce Razza;

20.    Medical records and films of Dr. R. Vaclav Hamsa;

21.     Medical records and films of Dr. K. E. Vogel;

22.     Medical records and films of Dr. Charles Aprill and/or Magnolia Diagnostics, Inc.;

23.     Medical records and films from Bogalusa Community Medical Center;

24.     Medical records and films from Northlake Physical Therapy & Rehabilitation Services;

25.     Medical records and films from Doctors Hospital;

26.     Medical records and films from Memorial Medical Center;

27.     Medical records and films from Kenner Regional Medical Center;

28.     Medical records and films from Lakeview Regional Medical Center;

29.     Medical records and films from American Orthopaedics;

30.     Medical records and films of Dr. Kevin Darr;

31.     The personnel file of Kirk Richard;

32.     Records from the St. Tammany Fire Protection District;

33.     Sidetrack agreements between CNIC and Gaylord Container dated November 7, 1986, March 23, 1987 and February 27, 1981;

34.     Photographs dated September 25, 1999, obtained from CNIC in discovery;

35.     Illinois Central Railroad Company Safety Rule Book;

36.     Illinois Central Railroad Company System Air Brake and Train Handling Rules;

37.     The personnel file of Randy E. Pigott;

38.     The personnel file of George Lawson;

39.     Any and all records from the case styled *Kirk A. Richard v. Paul A. LeBlanc,* No. 96-12941 in the 22nd JDC for the Parish of St. Tammany , including but not

limited to Mr. Richard's deposition dated June 2, 1997, other depositions taken in

the matter, discovery responses, pleadings, and any medical records from the

proceeding;

40.    Any exhibit introduced and/or used by any other party at trial;

41.    Illinois Central's responses to interrogatories;

42.    Illinois Central's responses to request for production;

43.    Plaintiff's responses to interrogatories;

44.    Plaintiff's responses to request for production; and

45.    Plaintiff's IRS, social security and earnings records.

c)    <u>By defendant, Canadian National/Illinois Central Railroad Company</u>:

1.    Roy Skidmore's personnel file (or excerpts) as maintained by Arnold

Transportation;

2.    Arnold Transportation's investigative and/or informational reports regarding the

subject incident;

3.    Accident scene and vehicle photographs obtained by Roy Skidmore on the

incident date (unless spoliated by Skidmore and/or Arnold);

4.    Safety and operating rules (or excerpts) promulgated by Arnold Transportation

for its drivers and in effect on the incident date;

5.    Gaylord accident report dated 9/25/99;

6.    CN/IC damaged car report;

7.    CN/IC report of inspection dated 9/27/99;

8.    K. A. Richard's personal injury report of 9/25/99;

9.    CN/IC agreement(s) for financial assistance/loan executed by plaintiff reflecting

lien/set-off;

10.   CN/IC and IC Hospital Association records reflecting medical payments made for
and on behalf of plaintiff as a result of the alleged incident;

11.   Map, plat, diagram and/or aerial photograph of the Gaylord Container
Corporation plant at Bogalusa, Louisiana;

12.   CN/IC Operating Rules in effect on the subject incident date;

13.   Photograph of the involved vehicles and accident area taken on the accident date
by representatives of Gaylord;

14.   CN/IC and Gaylord switch and respot lists evidencing the train's consist at the
time of the collision;

15.   Photographs of the accident scene and vehicles obtained on the accident date by
R. J. McCormick;

16.   Conductor's report of accident, completed on 9/25/99 by R. E. Pigott;

17.    Any exhibit listed or offered by any other party to this action.

d)    By Intervenor, Michael Hingle and/or Michael Hingle & Associates

Copies of invoices, checks, employment contract, and/or other documentation of fees,
costs, loans, medical expenses, etc., expended during the handling of this case, unless same is
stipulated to by the parties.

Intervenor reserves the right to supplement and/or amend this list of exhibits.

## XI.   DEPOSITION TESTIMONY:

All parties reserve the right to use any deposition taken in this matter for any purpose
allowed under the Federal Rules of Civil Procedure.  Submission of depositions will be in
compliance with the Court's standing orders.

The Arnold defendants may introduce the deposition testimony of Randy Pigott or any other witness who is unavailable or not subject to subpoena power.

CN/IC does not contemplate offering the testimony of any witness by deposition. It reserves the right to do so, should any witness whose deposition has been taken prove unavailable for trial. It also reserves the right to use any deposition herein taken for impeachment purposes.

Intervenor Michael Hingle and/or Michael Hingle & Associates, LLC, does not anticipate using at trial any deposition testimony other than, possibly, the deposition testimony of any witness residing outside the subpoena power of this Court or any witness who otherwise cannot attend the trial and possibly deposition testimony for impeachment, inconsistent statements and/or rebuttal.

## XII.    **CHARTS, GRAPHS, MODELS**:

All parties reserve the right to use charts, graphs, models, schematic diagrams and similar objects in opening statements or closing arguments. Any use of such items will be in compliance with the Court's standing orders.

CN/IC does not expect to use any such demonstrative aid, except it may use enlargements of any of its aforesaid exhibits (or excerpts) and it may use a chart incorporating the opinions of its train braking dynamics expert, Professor Robert A. MacRae, regarding speeds and distances. It reserves the right to use any demonstrative aid used or listed by any other party to this action.

## XIII.    **WITNESSES**:

a)    By complainant, Kirk Richard:

Complainant **will call** the following witnesses:

1.    Kirk Richard, complainant
      114 Woodhill Loop
      Slidell, Louisiana 70461

      To testify regarding the facts surrounding the accident of September 25, 1999,
      his prior medical and health records; his prior earning record; the injuries
      sustained by him in the accident; the affects of the injuries on his personal and
      work-life and his medical treatment;

2.    Dr. Bruce Razza, orthopaedic surgeon
      American Orthopaedic Spine and Sports
      1201 S. Clearview Pkwy., Suite 140
      Jefferson, Louisiana 70121

      To concerning the orthopaedic treatment and evaluation rendered to complainant
      following his accident and his opinion of any residual affect of the injury;

3.    Dr. Kenneth Vogel, neurosurgeon
      2912 Canal Street
      New Orleans, Louisiana 70119

      To testify concerning the neurosurgical treatment in evaluation rendered to
      plaintiff following his accident and his opinion of any residual affect of the
      condition;

4.    Randy Pigott
      1057 Hudson Road
      Summit, Mississippi 39666

      Who will testify regarding the facts and circumstances surrounding the accident;


Complainant **may call** the following witnesses:

5.    Roy Skidmore
      403 B-Kearly Drive
      Hallsville, Texas 75650

      Who will testify regarding the facts and circumstances surrounding the accident;

6.    George Lawson
      P. O. Box 451
      Franklinton, Louisiana 70438

      Who will testify regarding the facts and circumstances surrounding the accident;

7.    Dr. R. Vaclav Hamsa orthopaedic surgeon
      American Orthopaedic Spine and Sports
      1201 S. Clearview Pkwy., Suite 140
      Jefferson, Louisiana 70121

      To concerning the orthopaedic treatment and evaluation rendered to complainant
      following his accident and his opinion of any residual affect of the injury;

8.    Terry Pierce, investigating officer

      Who will testify regarding the facts and circumstances of this accident;

9.    Any witness listed by any other party.

b)    By defendants, Arnold Transportation Services, Inc. and Roy Skidmore

      Defendants will call Mr. Skidmore, Mr. Pigott, Mr. Griffith, and Dr. Aiken.

      Defendants may call the other listed witnesses.

1.    Roy Skidmore, 403 B-Kearly Drive, Hallsville, Texas 75650, (903) 668-4691
      Mr. Skidmore is excepted to testify regarding the incident in question.

2.    Kirk Richard, 4056 Ole Miss Drive, Kenner, Louisiana, (504) 466-0157 - -
      Mr. Richard is expected to testify regarding the incident and his alleged damages.

3.    Randy Eugene Pigott, 1075 Hutson Road, Summit, Mississippi, (601)276-3795–
      Mr. Pigott is expected to testify regarding the incident in question and prior
      incidents on the Gaylord property.

4.    George Lawson, P.O. Box 451, Franklinton, Louisiana 70438 - - Mr. Lawson is
      expected to testify regarding the incident in question and prior incidents at the
      Gaylord facility.

5.    O. Frank Griffith, 2335 Jay Street, New Orleans, Louisiana 70122.  (504) 283-
      7811 - - Mr. Griffith is an expert expected to testify on the matters contained in
      his expert report, previously provided.

6.    Murt Seal, Jr., 826 Avenue I, Bogalusa, Louisiana 70427, (504) 735-6465 - - Mr.
      Seal is expected to testify regarding prior incidents and safety concerns on the
      Gaylord property.

7.    E. Thomas, address unknown - - Mr. Thomas is expected to testify regarding
      prior incidents and safety on the Gaylord facility.

8.    Terry Pierce, 59408 Peach Orchard Road, Bogalusa, Louisiana 70427 (504) 732-

3778 - - Mr. Pierce is expected to testify regarding the incident in question and prior incidents and safety on the Gaylord facility.

9.     Dwight Arpin, P.O. Box 73410, Metairie, Louisiana 70033, (504) 887-1516 - - Mr. Arpin is expected to testify regarding the incident in question and photographs taken at the scene.

10.    Robert Putfark, address unknown - - Mr. Putfark is expected to testify regarding Kirk Richard's prior motorcycle accident.

11.    Allison Robert, address unknown - - Ms. Robert is expected to testify regarding Kirk Richard's prior motorcycle accident.

12.    Paul LeBlanc, address unknown - - Mr. LeBlanc is expected to testify regarding Kirk Richard's prior motorcycle accident.

13.    Crystal Galloway, address unknown - - Ms. Galloway is expected to testify regarding an accident on September 18, 2000 and safety on the Gaylord facility.

14.    Dr. David Aiken, 4224 Houma Boulevard, Suite 650, Metairie, Louisiana 70006, (504) 456-5152 - - Dr. Aiken has been tendered as expert and he will testify as to the matters set forth in his previously produced expert report.

15.    D. Ray Phelps, c/o Bogalusa Police, 214 Arkansas Avenue, Bogalusa, Louisiana 70427 - - Officer Phelps is expected to testify regarding his investigation of the accident.

16.    Sylvester May, 819 Dobb Street, Bogalusa, Louisiana, (504) 735-0164 - - witness to prior accident and safety concerns on Bogalusa facility.

17.    Tim Rupt, address unknown - - Mr. Rupt is expected to testify regarding prior accidents and safety concerns on the Gaylord facility.

18.    Richard Tommie, 1739 White Drive, Huey Town, Alabama 35013, (205) 491-8981 - - Mr. Tommie is expected to testify regarding prior accidents and safety concerns on the Gaylord facility.

19.    Willie McNeal, 510 Evanhill, Somerville, Tennessee 38068, (901) 465-7391 - - Mr. McNeal is expected to testify regarding accidents and safety concerns on the Gaylord facility.

20.    Douglas Johnson, 6496 Branch Road, Smithdale, Mississippi 39664, (601) 567-2615 - - Mr. Johnson is expected to testify regarding accidents and safety concerns on the Gaylord facility.

21.    Douglas Holts, 1108 Hickory Street, Bogalusa, Louisiana 70427 - - Mr. Holts is

expected to testify regarding accidents and safety concerns on the Gaylord facility.

22.    Robert Wagner, 20506 Windy Ridge Road, Bogalusa, Louisiana 70427, (504) 735-6949 - - Mr. Wagner is expected to testify regarding safety conditions at the Bogalusa facility.

23.    Dr. Kevin Darr, Lakeview Regional Medical Center, 95 East Fairway Drive, Covington, Louisiana 70433 - - Dr. Darr is expected to testify regarding the injuries sustained by Kirk Richard and his previous motorcycle accident.

24.    Dr. Jay DeSalvo, Lakeview Regional Medical Center, 95 East Fairway Drive, Covington, Louisiana 70433 - - Dr. DeSalvo is expected to testify regarding the injuries sustained by Kirk Richard and his previous motorcycle accident.

25.    Dr. Mitchell Massey, Bogalusa Medical Center, 433 Plaza, Bogalusa, Louisiana 70427, (504) 732-7122 - - Dr. Massey is expected to testify regarding Kirk Richard's physical condition following the accident in question.

26.    Dr. B. Ravi - - Bogalusa Medical Center - - Dr. Ravi is expected to testify regarding Richard's physical condition following the accident.

27.    Dr. Richard Hages, 6601 Veterans Boulevard, Suite 39, Metairie, Louisiana 70003 - - Dr. Hages is expected to testify regarding prior treatments and injuries sustained by Kirk Richard.

28.    Custodian of Records for Northlake Physical Therapy & Rehabilitation Services, 2659 N. Causeway Boulevard, Mandeville, Louisiana 70471, (504) 893-0778 - - The custodian is expected to authenticate medical records.

29.    Custodian of Records for Memorial Medical Center, 301 N. Jefferson Davis Parkway, New Orleans, Louisiana 70119 - - The custodian is expected to authenticate medical records.

30.    Custodian of Records for Bogalusa Community Medical Center, 433 Plaza, Bogalusa, Louisiana 70427 - - The custodian is expected to authenticate medical records.

31.    Custodian of Records for Kenner Regional Medical Center, 180 W. Esplanade Avenue, Kenner, 70065 - - The custodian is expected to authenticate medical records.

32.    Custodian of Records for Lakeview Regional Medical Center, The custodian is expected to authenticate medical records.

33.    Custodian of Records for Dr. Kevin Darr, 95 E. Fairway Drive, Covington,

Louisiana 70433, (504) 867-3800 - - The custodian is expected to authenticate medical records.

34.    Custodian of Records for Doctors Hospital, 4320 Houma Boulevard, Metairie, Lousiana 70006 - - The custodian is expected to authenticate medical records.

35.    Custodian of Records from the St. Tammany Fire Protection District, 709 Gerard Street, Mandeville, Louisiana 70448 - - The custodian is expected to authenticate records.

36.    Custodian of Records for Dr. Richard Hages, 6601 Veterans Boulevard, Suite 39, Metairie, Louisiana 70003 - - The custodian is expected to authenticate medical records.

37.    Custodian of Records for Dr. Bruce Razza, Dr. R. Vaclav Hamsa, and/or American Orthopaedic, 1201 S. Clearview Parkway, Suite 140, Jefferson, Louisiana 70121, (504) 733-0211 - - The custodian is expected to authenticate medical records.

38.    Custodian of Records of Dr. Charles Aprill or Magnolia Diagnostics, 2700 Cadiz Street, New Orleans 70115, (504) 891-1975 - - The custodian is expected to authenticate medical records.

39.    Any witness needed to authenticate any documents that cannot be agreed to by stipulation.

40.    Defendants reserve the right to name any other witness if another party is permitted to add additional witnesses.

41.    Any witness listed, subpoena or called by any other party.

The Arnold defendants filed their witness list in accordance with prior Court orders. CNIC's witness and exhibit lists were not filed timely. CNIC has never produced any expert report.


c)    By defendant, Canadian National/Illinois Central Railroad Company:

1.    R.J. McCormick (Will Call)
      Risk Manager, CN/IC
      P.O. Box 10500
      New Orleans, Louisiana

(To authenticate documents, photographs and exhibits, to testify as to his conversations with the parties involved, including plaintiff, and to testify as to his invesitigation into the incident.)

2.    Keith Hancock (May Call)
      Supervisor of Locomotive Engineers
      1128 South Yard Road
      McComb, Mississippi

(To testify as to locomotive engineer competency testing, event recorder rules and policies, CN/IC rules, operating and switching procedures and to testify as to his observations at the accident scene.)

3.    PFC D. Ray Phelps (May Call)
      C/O Bogalusa City Police
      Bogalusa, Louisiana

(To testify as to his investigation into the subject incident.)

4.    J. A. Brumfield (May Call)
      Mechanical Foreman/Yardmaster, CN/IC
      1300 Railroad Avenue
      Bogalusa, Louisiana

(To testify as to his inspection of the cars and locomotive involved in the accident and his observations at the scene, as well as to testify as to plant operations at Gaylord's facility in Bogalusa, and CN/IC's switching policies there.)

5.    Roy Skidmore (May Call as a "Hostile Witness")
      403B Kearly Drive
      Hallisville, Texas

(To testify as to his employment as a truckdriver for Arnold Transportation, including the safety and operational training he received, and to testify as to the facts of the collision as per his October 20, 2000 discovery deposition.)

6.    G.B. Lawson (Will Call)
      CN/IC Locomotive Engineer
      P.O. Box 451
      Franklinton, Louisiana

(To testify as to the facts and circumstances of the accident, including his operation of the locomotive and of the train in question at the time of the accident, per his discovery deposition of October 11, 2000.)

7.    R.E. Pigott (Will Call)

CN/IC Conductor
1057 Hudson Road
Summit, Mississippi

(To testify as to the facts and circumstances of the accident, including his observations of the truck in question prior to and at the time of the collision, per his discovery deposition of October 11, 2000.)

8.    Plaintiff K.A. Richard (May Call as a "Hostile Witness")
      CN/IC Brakeman
      4056 Ole Miss Drive
      Kenner, Louisiana

(To testify as to the facts and circumstances of the accident, his injuries and treatment, and to indentify documents, including loan/advancement receipt(s) and collective bargaining/health care contract benefits, etc., per his August 30, 2000 discovery deposition.)

9.    Dr. Kenneth Boudreaux or (May Call)
      Dr. Stuart Wood or
      C.P.A. Dan Cliffe
      1424 Bordeaux Street
      New Orleans, Louisiana

(To testify as an expert regarding his evaluation of plaintiff's accident related economic losses per his timely provided narrative report.)

10.   David W. Aiken, Jr., M.D. (May Call)
      4224 Houma Boulevard
      Metairie, Louisiana

(To testify as an expert regarding his independent medical evaluation of plaintiff per his timely exchanged narrative report.)

11.   Professor R. A. MacRae (Will Call)[1]

---

[1]Professor MacRae will be called provided the Court grants CN/IC's pending motion for leave to engage and call him despite the prior expiration of the deadlines for exchanging experts' reports. His testimony is needed to respond to bogus opinions regarding train braking expectations and performance tendered by CN/IC's opponent codefendants after expiration of

1500 7th Avenue N.E.
Jacksonville, Alabama

(To testify as an expert in train dynamics and train braking as to the train's pre-incident speed in accordance with a report to be provided by December 15, 20000 if he is allowed to be added: CN/IC offered at least two weeks ago to give Arnold Transportation's and Roy Skidmore's lawyers an opportunity to depose this expert before trial, but they have refused the offer so far, apparently hoping to exploit an artificial cutoff against a recently added party.)

      12.     Any witness called or listed by any other party.

d)     <u>By Intervenor, Michael Hingle and/or Michael Hingle & Associates</u>

Will Call:

1.     Michael Hingle

May Call:

      Michael Hingle and/or other representative of Michael Hingle & Assoc.
      220 Gause Blvd., Suite 200
      Slidell, LA 70458

Re: facts of discharge, amount and value of legal services rendered, medical expense, loans, costs advanced, expenses, etc.

2.     Lee Fandal, Michael Hingle & Assoc.
      220 Gause Blvd., Suite 200
      Slidel, LA 70458

Re: medical expense, loans, costs advanced, expenses, etc.

3.     Heide B. Pellegrin, Michael Hingle & Assoc.
      220 Gause Blvd., Suite 200
      Slidell, LA 70458

Re: work done on file.

Intervenor may also call any witness listed by any other party or listed in any pretrial order, inserts or pleadings filed herein.

Intervenor reserves the right to supplement and/amend this list of witnesses upon proper

_____

the discovery period.

notice.

## XIV.  **TRIAL MODE:**

This case is set as a jury trial.

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions, that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

This is a jury case on all aspects of the case.  A complete set of jury instructions and a complete set of jury interrogatories must be submitted on paper and on disk in WordPerfect format.  The instructions, interrogatories, trial memoranda and any special questions that the Court is asked to put to perspective jurors on *voir dire* shall be delivered to the Court and opposing counsel not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

## XV.  **DAMAGES:**

The issue of liability will not be tried separately from those of quantum.

## XVI.  **OTHER MATTERS EXPEDITING A DISPOSITION:**

None.

## XVII.  **NUMBER OF TRIAL DAYS:**

The trial shall commence on the 16th day of January 2001, at 8:30 a.m. a realistic estimate of the number of trial days required is three (3) to four (4) days.

## XVIII.  **FORMULATION OF PRE-TRIAL:**

This Pre-Trial Order has been formulated at the conference at which counsel for the respective parties have appeared by telephone.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of this trial and may not be amended except by consent of the parties and the Court, or by Order by the Court to prevent manifest injustice.

## XIX.  **SETTLEMENT:**

Possibility of settlement of this case has been considered.

New Orleans, Louisiana this _____ 6 th _____ day of _____ Decem 2000.

_____
**UNITED STATES DISTRICT JUDGE**

Respectfully submitted,

**SHEARMAN - DENENEA, L.L.C.**

By: _____
Brian G. Shearman, (#19151)
John H. Denenea, Jr. (#18861)
829 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-9322
**Attorneys for complainant,
Kirk Richard**

**CHAFFE, McCALL, PHILLIPS
TOLER & SARPY, L.L.P.**

By: _____
John F. Olinde, T.A. (#1515)
Brent A. Talbot (#19174)
Douglas R. Holmes (#23996)
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000

**LEMLE & KELLEHER, L.L.P.**

By: _David Kelly_
David S. Kelly, T.A. (#7703)
Timothy F. Daniels (#16878)
Robert S. Emmett (#23725)
21st Floor, Pan-American Life Center
601 Poydras Street
New Orleans, Louisiana 70130
Telephone: (504) 586-1241


**MICHAEL HINGLE & ASSOC., INC.**


By: _____
Michael Hingle/Guy Huard/W.M. Hingle
Blaine Barrilleaux
P. O. Box 1129
220 Gause Blvd.
Slidell, Louisiana 70459
Telephone: 641-6800

**B Shearman**

| | |
|---|---|
| **From:** | Olinde, John <Olinde@chaffe.com> |
| **To:** | <bshearman@baronnelaw.com> |
| **Sent:** | Monday, December 04, 2000 4:24 PM |
| **Subject:** | FW: PTO--Richard v. Arnold, et al |

-----Original Message-----
From: Olinde, John
Sent: Monday, December 04, 2000 4:05 PM
To: 'David S. Kelly'; 'lmarcades@barronelaw.com'
Cc: Olinde, John
Subject: RE: PTO--Richard v. Arnold, et al

Brian-with respect to CNIC's exhibits, we object to Exh.1 and 2 since thet
are subject to a pending motion. We object to Exhs.11,14 and 16 as not
produced. With respect to witnesses, we object to No.11 as not listed
timely and still no report. I would include more argumentative and
suggestive comments such as those included by David, but I don't think the
court is interested in the rhetoric. jfo

-----Original Message-----
From: David S. Kelly [mailto:dkelly@lemle.com]
Sent: Monday, December 04, 2000 3:40 PM
To: 'lmarcades@barronelaw.com'
Cc: 'olinde@chaffe.com'
Subject: PTO--Richard v. Arnold, et al

Brian

I've reviewed Arnold/Skidmore's inserts, as faxed this a.m. here are my
changes:

Paragraph 1: no change
Paragraph 2: my client is "Canadian National/Illinois Central Railroad
Company."
Paragraph 3: use my description of CN/IC and its claims.
Paragraph 4: the court has federal question (28 U.S.C. Section 1331)
jurisdiction over the FELA claims asserted against CN/IC.
Paragraph 5: be sure you incorporate my listing of pending and contemplated
motions verbatim.
Paragraph 7: I have no problem with Arnold/Skidmore's listing, even though
many of the facts listed are far from material to the case.
Paragraphs 8 and 9: Add all of my listed contested facts law questions

12/04/2000

verbatim.
Paragraph 10: I object to Arnold/Skidmore exhibits:
4-hearsay; not produced.
8-irrelevant
9-hearsay and irrelevant
10-12-hearsay and irrelevant
13-hearsay
14-hearsay and irrelevant
18-irrelevant
19-30(inclusive)-authenticity unless certified and
complete-exclusive of reports written for counsel, which are hearsay; CN/IC
objects to receipt of any bills it paid unless plaintiff stipulates to its
set-off/lien
31-too vague to allow objection
32-ditto
37-38(inclusive)-too vague; not relevant
39-never produced; CN/IC reserves the right to object
40-too vague to permit objection
41-44(inclusive)-too vague to permit objection; the standard for
discovery is broader that the standard for admissibility; the particular
items/q's & a's must be identified
Paragraph 13: Arnold/Skidmore witnesses 6, 7, 8, 9, 16 17, 18, 19, 20, 21
and 22 should be stricken for failure to identify prior to expiration of the
discovery period.

CN/IC's witness and exhibit lists were filed and served on 11-07-00; it has
not produced a report from Professor MacRae because it has not yet been
granted leave to add him as a witness.

Be sure you include my bar roll number and trial attorney designation in the
signature block.

I haven't seen your inserts yet.

DSK  12-4-00

12/04/2000

## L Marcades

**From:**      David S. Kelly <dkelly@lemle.com>
**To:**        <lmarcades@barronelaw.com>
**Cc:**        <olinde@chaffe.com>
**Sent:**      Monday, December 04, 2000 3:40 PM
**Subject:**   PTO--Richard v. Arnold, et al

Brian

I've reviewed Arnold/Skidmore's inserts, as faxed this a.m. here are my changes:

Paragraph 1: no change
Paragraph 2: my client is "Canadian National/Illinois Central Railroad Company."
Paragraph 3: use my description of CN/IC and its claims.
Paragraph 4: the court has federal question (28 U.S.C. Section 1331) jurisdiction over the FELA claims asserted against CN/IC.
Paragraph 5: be sure you incorporate my listing of pending and contemplated motions verbatim.
Paragraph 7: I have no problem with Arnold/Skidmore's listing, even though many of the facts listed are far from material to the case.
Paragraphs 8 and 9: Add all of my listed contested facts law questions verbatim.
Paragraph 10: I object to Arnold/Skidmore exhibits:
4-hearsay; not produced.
8-irrelevant
9-hearsay and irrelevant
10-12-hearsay and irrelevant
13-hearsay
14-hearsay and irrelevant
18-irrelevant
19-30(inclusive)-authenticity unless certified and
complete-exclusive of reports written for counsel, which are hearsay; CN/IC objects to receipt of any bills it paid unless plaintiff stipulates to its set-off/lien
31-too vague to allow objection
32-ditto
37-38(inclusive)-too vague; not relevant
39-never produced; CN/IC reserves the right to object
40-too vague to permit objection
41-44(inclusive)-too vague to permit objection; the standard for discovery is broader that the standard for admissibility; the particular items/q's & a's must be identified
Paragraph 13: Arnold/Skidmore witnesses 6, 7, 8, 9, 16 17, 18, 19, 20, 21 and 22 should be stricken for failure to identify prior to expiration of the discovery period.

CN/IC's witness and exhibit lists were filed and served on 11-07-00; it has

12/04/2000

not produced a report from Professor MacRae because it has not yet been granted leave to add him as a witness.

Be sure you include my bar roll number and trial attorney designation in the signature block.

I haven't seen your inserts yet.

DSK  12-4-00