FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JUN - I  AM 10: 18

LORETTA G. WHYTE
CLERK

PLEASE FILE
IN RECORD

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KIRK RICHARD** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 00-0058** |
| **ARNOLD TRANSPORTATION SERVICES,** | * | **SECTION "B"** |
| **ROY SKIDMORE, AND ILLINOIS CENTRAL** | | |
| **RAILROAD COMPANY** | * | **MAGISTRATE "2"** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PRE-TRIAL ORDER

I.    A Pre-Trial Conference will be held in this matter before the Honorable Ivan L. R. Lemelle of the United States District Court, Eastern District of Louisiana, on Thursday, May 31, 2001, at 3:00 p.m., at New Orleans, Louisiana.

II.    **APPEARANCE OF COUNSEL:**

a)    Attorneys for Plaintiff,          SHEARMAN-DENENEA, L.L.C.
Kirk Richard                     Brian G. Shearman, T.A. (#19151)
                                 John H. Denenea, Jr. (#18861)
                                 829 Baronne Street
                                 New Orleans, LA 70113
                                 Telephone: (504) 581-9322

DATE OF ENTRY

JUN 1 2001



504003_1

| (b) | Attorneys for Defendants, Arnold Transportation Services, Inc. and Roy Skidmore | CHAFFE, MCCALL, PHILLIPS, TOLER & SARPY, L.L.P.<br>John F. Olinde, T.A. (#1515)<br>Brent A. Talbot (#19174)<br>Douglas R. Holmes (#23996)<br>2300 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA 70163-2300<br>Telephone: (504) 585-7000 |
|---|---|---|
| (c) | Attorneys for Defendant, Canadian National/Illinois Central Railroad Company | LEMLE & KELLEHER, L.L.P.<br>David S. Kelly, T.A. (#7703)<br>Timothy F. Daniels (#16878)<br>Robert S. Emmett (#23725)<br>601 Poydras St, 21st Floor<br>New Orleans, LA 70130<br>Telephone: (504) 586-1241 |
| (d) | Attorney for Intervenor Michael Hingle/Guy Huard/ Blaine Barrilleaux | MICHAEL HINGLE & ASSOC., INC.<br>W.M. Hingle<br>P.O. Box 1129<br>220 Gause Blvd.<br>Slidell, Louisiana, 70459<br>Telephone: (504) 641-6800 |

## III.    DESCRIPTION OF THE PARTIES:

a)    By plaintiff, Kirk Richard

Kirk Richard is a person of the full age of majority and a resident of the Parish of St. Tammany Parish, State of Louisiana.

b)    By defendant, Arnold Transportation Services, Inc. and Roy Skidmore (hereinafter the "Arnold Defendants"):

Defendant, Roy Skidmore, is a resident of Texas. Defendant, Arnold Transportation Services, Inc. is a Pennsylvania corporation doing business in Louisiana.

c)    By defendant/plaintiff-in-counterclaim, Canadian National/Illinois Central
      Railroad Company (hereinafter "CN/IC")

      CN/IC is an interstate common carrier by railroad, incorporated under the laws of
      and maintaining its principal business offices in the State of Illinois; it is a wholly
      owned subsidiary of the Canadian National Railway. CN/IC was named as a
      defendant herein by supplemental complaint; plaintiff's claims against it arise
      exclusively under the Federal Employers Liability Act, 45 U.S.C. § 51 *et seq.*
      When it answered plaintiff's complaint it asserted a counterclaim against plaintiff
      to recoup out of his recovery herein approximately $17,300.00 in medical benefits
      provided to plaintiff and to recoup $13,300.00 advanced or loaned to plaintiff as a
      result of the incident in suit. CN/IC is self-insured for the liability asserted
      against it herein.

d)    By intervenor, Michael Hingle and/or Michael Hingle & Associates

      Intervenor, Michael Hingle, a person of the full age of majority and a resident of
      St. Tammany Parish, LA and/or Michael Hingle & Associates, LLC, a
      corporation authorized to do and doing business in the State of Louisiana, has
      intervened for recovery of fees/loans/costs and expenses incurred in the handling
      of this case prior to being discharged without cause by plaintiff, Kirk Richard.

## IV.    JURISDICTION

This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C.

Section 1332, otherwise known as diversity of citizenship, and the sums in controversy exceed

the statutorily required threshold of $75,000.00, exclusive of interest and costs. Federal question

jurisdiction pursuant to 28 U.S.C. 1331 exists as to plaintiff's claims against CN/IC under the

Federal Employers Liability Act, more commonly known as FELA.

## V.    MOTIONS PENDING OR CONTEMPLATED:

a)    By plaintiff, Kirk Richard:

Plaintiff does not intend to file any further motions in this case.

b)     By defendants, Arnold Transportation Services, Inc. and Roy Skidmore:

The Arnold defendants previously filed a Motion in Limine to exclude any reference to Roy Skidmore's termination or Arnold's finding that this accident was preventable. The motion was partially granted. The Arnold defendants intend to re-urge this motion.

c)     By defendant, Canadian National/Illinois Central Railroad Company:

CN/IC is aware of no pending motions and does not anticipate filing any motions - - dispositive or otherwise - - prior to the trial.

## VI. A BRIEF SUMMARY OF THE MATERIAL FACTS CLAIMED BY:

a)     By plaintiff, Kirk Richard:

On or about September 25, 1999, plaintiff, Kirk Richard, was employed with defendant, Canadian National/Illinois Central Railroad Company. He was working with two other employees of the Railroad, namely, Randy Pigott (conductor) and George Lawson (engineer). These three individuals were working at the Gaylord Plant located in Bogalusa, Louisiana.

Plaintiff, Kirk Richard, was caused to sustain serious injuries to his lower back and his left knee when the train on which he was riding collided with an 18 wheeler being operated by Roy Skidmore. Roy Skidmore at the time of this accident was employed with Arnold Transportation Services, Inc.

It is plaintiff's position that the primary cause of this accident was the failure of the defendant, Roy Skidmore, to stop his vehicle at the intersection where the train crossed the roadway. Mr. Skidmore's testimony confirms that he had an obligation to stop at the stop sign and wait for the train to clear the intersection. Mr. Skidmore further confirmed that the train had the right of way and that it was his responsibility to yield the right away to the train. The strongest evidence, implicating Mr. Skidmore for his negligence in this accident was the

investigation conducted by Mr. Skidmore's employer, Arnold Transportation Services, Inc. Following their investigation, Mr. Skidmore was terminated as Arnold Transportation determined that the accident forming the basis of this lawsuit was preventable.

Plaintiff further submits that his employer, Canadian National/Illinois Central Railroad Company, is also responsible for this accident. The testimony of Mr. Pigott and Mr. Lawson clearly reflect that the sole person on the train with the responsibility of watching for dangers is the conductor Randy Pigott. Mr. Pigott was located on the front of the first box car. He was essentially the "eyes of the engineer." The testimony of Mr. Lawson confirms that Mr. Pigott at no time gave any warnings of the oncoming 18 wheeler. As such, no evasive action was taken by Mr. Lawson. The failure of Mr. Pigott to perform his duties in a reasonable and safe manner demonstrates that the railroad's conduct contributed to the accident with the Skidmore 18 wheeler.

Finally, plaintiff submits that he is free from fault in this accident. Mr. Richard was located on the fifth box car on the opposite side of the train from which the 18 wheeler was approaching. Mr. Richard could not see the oncoming 18 wheeler, had no duty to watch for such oncoming traffic, and as such, could not in any way have alerted Mr. Lawson to the impending danger.

As a result of this accident, plaintiff, Kirk Richard, sustained injuries to both of his knees, lower back, and jaw. He was taken on the same day of the accident by his superiors to a hospital in Bogalusa for emergency medical treatment. He was discharged from the hospital with a recommendation that he follow up with a medical doctor.

Mr. Richard's medical care continued with Dr. Vaclav Hamsa, Dr. Bruce Razza, Dr. Kenneth Vogel, and Dr. Paul Watters. Mr. Richard underwent two separate surgical procedures,

an arthroscopic knee surgery as well as a three level neurotomy in his lower back.

Mr. Richard has just recently been discharged by Dr. Kenneth Vogel and has returned to work with his employer, Canadian National/Illinois Central Railroad Company.

Mr. Richard has incurred medical expenses totaling $56,041.85. He also has incurred wage loss totaling approximately $56,041.85.

b)    By defendants, Arnold Transportation Services, Inc. and Roy Skidmore:

On September 25, 1999, a Canadian National/Illinois Central Railroad (CN/IC) train collided with an Arnold Transportation Services tractor-trailer driven by Roy Skidmore. This relatively minor collision took place at a rail crossing within the Gaylord Container Corporation paper mill in Bogalusa, Louisiana. The CN/IC train was eighteen cars long and was involved in a shoving movement, meaning that an engine was pushing 18 cars from behind them, at the time of the accident. The plaintiff, an employee of CN/IC, was riding on the outside of a boxcar at least five cars from the collision. Plaintiff has claimed that his body hit against the car at impact.

The crossing was privately owned and maintained by Gaylord Container Corporation, which is not a party. Gaylord Container Corporation also installed and maintained all traffic controls, warning signs, and the roadway at the crossing and within its plant. The crossing itself was poorly designed, very confusing, and dangerous since there were several parallel tracks at the crossing, and each track had a stationary line of boxcars on it. There have been a number of accidents at this same crossing. Gaylord also had installed a blue light and siren on a pole approximately 90 feet from the crossing, but these intended warnings were not functioning, nonstandard, and inadequate.

The impact of this collision was very minimal. In fact, Roy Skidmore, the truck driver, did not realize that his trailer had been struck until he felt a loss of control of the trailer as it was

slowly pushed by the train. The engineer, Mr. Lawson, did not know that he had struck the truck until he was told after the train stopped. The effect of the impact to the plaintiff would have been similar to that of a braking train or of cars coupling, events that the plaintiff experienced every day.

The injuries suffered by the plaintiff are very suspect, and his version of the accident is impossible. He testified that he was injured when his body swung forward and slammed against the side of the train. He was on a ladder on the very end of the car, and there was no "side" to slam into since he was on the end. Additionally, the force of the collision could not have caused the body movement plaintiff described. At different times, plaintiff has also suggested that he jumped or was thrown from the train. In any event, he admittedly never fell to the ground.

After the incident, plaintiff remained at the scene for approximately two hours. He denied injury when questioned at the scene. He was seen at the emergency room in Bogalusa and released that same night. Later that evening, after seeing a commercial on television, the plaintiff contacted Michael Hingle and hired him. From that day on, he has been treated exclusively by doctors to whom he was referred by his several attorneys.

He saw Dr. Hamsa and Dr. Razza for less than five months. Dr. Razza performed arthroscopic surgery on plaintiff's right knee on February 2, 2000. When the plaintiff switched lawyers, he also switched doctors. In late February 2000, the plaintiff was sent to Dr. Vogel, who started to treat plaintiff's back. Dr. Vogel performed a lumbar medical branch neurotomy ( a procedure that apparently only Dr. Vogel performs locally) on July 26, 2000. In September 2000, Dr. Vogel released the plaintiff to go back to work. In October, 2000, the plaintiff returned to work.

An independent medical examination was performed by Dr. David Aiken on October 2,

2000. Dr. Aiken found no objective evidence that the plaintiff was injured. MRI's and X-rays of plaintiff's neck, back and both knees revealed no evidence of injury and were completely normal, except for old injuries to plaintiff's back unquestionably from a prior accident. Dr. Aiken found the plaintiff to be suffering no ill effects from his reported accident on September 25, 1999, that plaintiff required no medical care, and that arthroscopic surgery and the neurotomy were not indicated.

c)    By defendant, Canadian National/Illinois Central Railroad Company:

Defendant/counterclaimant CN/IC denies any and all liability to plaintiff for the September 25, 1999 train/truck collision at issue and disputes the nature and extent of the injuries allegedly sustained by plaintiff Kirk Richard as a consequence.

The train/truck collision occurred within the Gaylord Container Corporation plant in Bogalusa, Louisiana at about 11:30 a.m. on the date aforesaid. The weather was clear and played no part in the incident. Just prior to the accident CN/IC's crew, including conductor R.E. Pigott, locomotive engineer G.B. Lawson and brakeman K.A. Richard (plaintiff herein), was shoving an 18 car cut northward through the plant in order to deposit 5 partially loaded boxcars inside a loading facility at Gaylord's request. The train was at all times operated within "Restricted Speed" (i.e., at 10 mph or less). Conductor Pigott rode on the front corner of the boxcar leading the movement so as to be able to direct engineer Lawson's operation of the train via radio; for this move the engine was on the rear of the train, over 1000 feet away from the leading boxcar on which conductor Pigott was riding, pushing 18 cars (9 of which were empty, 9 of which were partially loaded). Brakeman Richard rode the train on the 5th car behind the lead, as he was to disconnect the five lead cars from the rest of the train once they were properly positioned within the loading facility. The operation of the train was at all times reasonable and prudent and within

all applicable rules and policies of the CN/IC.

As the slow-moving train neared a gravel road crossing within the plant, conductor Pigott observed an 18 wheeler moving southward on a roadway paralleling the railroad tracks on the west at a modest rate of speed. As the truck did not appear to be out of control, nor was it apparent the truck driver intended to turn eastward to traverse the tracks at the gravel crossing, conductor Pigott did not interdict the movement of the train. As the truck reached the crossing, it turned left and proceeded eastward onto the tracks.

Once he realized the truck driver was not going to stop his vehicle and let the train pass safely, so that a collision was inevitable and eminent, conductor Pigott radioed his engineer to stop the train, and stepped off the train to avoid being crushed between the vehicles. On receiving the radio instruction to stop the train engineer Lawson immediately applied the engine's independent brake valve, resulting in the quickest application of maximum braking force on the locomotive wheels. Because the train was being operated within a plant and was performing switching work, the air brakes on the 18 cars the engine was shoving were not charged and operable. Given the mass and velocity of the train and the time required to achieve maximum braking, it was impossible for the train to stop or even to slow enough to allow the truck to clear. The train collided with the trailer and shoved it ahead of the decelerating cars, which traveled about 200 feet before stopping. Again, because of the mass and velocity of the train as compared to the mass of the empty semi-trailer, the train's deceleration and the impact of the collision produced inconsequential forces in and to the body of the train.

As a result of the collision, Kirk Richard claims he was jostled about, and either knocked off of the car on which he rode or he jumped off. He claims he hurt his left knee and back in the accident. Kirk Richard was off work from the accident date until early November 2001-

approximately 13 ½ months, although CN/IC does not concede he was disabled for the whole time, whether as a result of injuries sustained in the accident or otherwise. The nature and extent of plaintiff's accident related injuries are controverted. CN/IC and/or the Illinois Central Hospital Association did pay, through May of 2000, approximately $17,300.00 for medical care and treatment for Kirk Richard; it also lent him (advanced to him) the sum of $13,000. CN/IC is herein to recoup those sums.

d)      By intervenor, Michael Hingle and/or Michael Hingle & Associates

On the 26th day of September, 1999, the intervenors began providing legal services to the petitioner herein to the extent of the value of the legal services rendered and medical expense, loans and other costs and expenses advanced to petitioner and desire to claim that amount out of any recovery made by the petitioner herein.

**VII.    A SINGLE LISTING OF ALL UNCONTESTED MATERIAL FACTS:**

1.      On September 25, 1999, an accident occurred between an 18 wheeler being operated by Roy Skidmore and a train owned by CN/IC.

2.      That Roy Skidmore was acting in the course of scope of his employment with Arnold Transportation Services, Inc. at the time of this accident.

3.      At the time of this accident, Kirk Richard was employed with CN/IC.

4.      The plaintiff was the brakeman on a CN/IC train that collided with a truck and trailer driven by Roy Skidmore on September 25, 1999.

5.      Randy Pigott (the train's conductor) and George Lawson (the train's locomotive engineer) were in the course and scope of their employment with CN/IC at the time of the incident.

6.      CN/IC was pushing eighteen boxcars with a locomotive in the Gaylord Container Plant in Bogalusa, Louisiana at the time of the incident.

7.      The status of Arnold Transportation Inc. as alleged in its answer;

8.      The status of Roy Skidmore as alleged in his answer;

9.    The status of CN/IC as alleged in its answer;

10.   That Gaylord Container Corporation owned, maintained and controlled the railroad tracks, the gravel roadway and the paper plant in which the accident at issue occurred;

11.   That Gaylord Container Corporation installed and maintained all traffic control and warning signs within its plant;

12.   That the accident occurred in broad daylight.

## VIII.   A SINGLE LISTING OF ALL CONTESTED ISSUES OF FACT:

1.    The negligence of the defendants;

2.    The cause of any accident or injury to the plaintiff;

3.    The nature and extent of plaintiff's alleged injuries, if any;

4.    The extent of the damages if any, to which the plaintiff is entitled.

5.    Whether any command was given by the conductor or the plaintiff to the engineer to stop the train before the collision.

6.    Whether the crossing was poorly designed, confusing and dangerous.

7.    Whether the crossing's signals and warnings were inadequate.

8.    The extent to which the plaintiff was injured, if at all, as a result of the collision.

9.    Whether the plaintiff's surgeries were necessary or indicated.

10.   Whether Kirk Richard immediately claimed any injury following the accident. (immediator h.n.)

11.   Whether Kirk Richard returned to work for CN/IC in October, 2000.

12.   Whether the medical expenses were properly incurred and the amount of medical expenses.

13.   Whether CN/IC is entitled to recoup from plaintiff the $13,300.00 it loaned (advanced) to him as a consequence of the subject collision, and alternatively whether it enjoys a set-off for the said sum against plaintiff's economic loss claims;

14.   Whether CN/IC is entitled to recoup from plaintiff the medical benefits it and/or the IC Hospital Association has paid to and for him as a consequence of the injuries he

sustained— which benefits CN/IC believes total approximately $17,300.00—and alternatively whether CN/IC enjoys a set-off for the said payments against plaintiff's recovery herein;

15.  Whether any non-party, including Gaylord Container Corporation, was guilty of negligence or other fault causative of the collision;

16.  Whether plaintiff sustained any compensable injuries as a result of the subject collision, and if so the sums to which he is entitled as damages;

17.  All disputed facts reflected in the parties' respective summaries of material fact;

18.  The extent of any reimbursement to which intervenor is entitled.

19.  Whether or not intervenor was discharged without cause.

20.  Intervenor began providing legal services to plaintiff in connection with the accident upon which plaintiff's suit is based beginning September 26, 2000.

21.  Plaintiff discharged intervenor February 4, 2000.

## IX.    A SINGLE LISTING OF ALL CONTESTED ISSUES OF LAW:

1.  Whether the accident and injuries were caused by the negligence of CN/IC.

2.  Whether the accident and injuries were caused by the negligence of Kirk Richard.

3.  Whether the accident and injuries were caused by the negligence of Roy Skidmore .

4.  Whether the accident and injuries were caused by the negligence of Gaylord Container Corporation.

5.  Whether plaintiff's medical treatments were causally related to the accident.

6.  Whether plaintiff's economic loss claims can be presented to the jury herein on a "gross wage" basis so long as plaintiff herein asserts FELA claims against CN/IC;

7.  All legal issues implicit in the parties' respective summaries of material fact and in their listings of contested factual issues.

X.    **EXHIBITS:**

Defendants objections are noted herein.

a)    <u>By plaintiff, Kirk Richard</u>

1.    Medical    bills    of    Kirk    Richard;    (Arnold    objects    –    not    sufficiently    identified/authentication);

2.    Medical    records    of    Kirk    Richard;    (Arnold    objects    –    not    sufficiently    identified/authentication);

3.    Accident report; (Arnold objects – not sufficiently identified, authentication);

4.    Any and all photographs of the accident scene; (Arnold objects – not sufficiently identified);

5.    Income tax information of Complainant, Kirk Richard; (Arnold objects, not produced);

6.    Any and all applicable insurance policies of the defendants; (Arnold objects, irrelevant);

7.    All deposition testimony; (Arnold objects subject to proper FRCP showing);

8.    Any documents or exhibits listed by any other party.

b)    <u>By defendants, Arnold Transportation Services, Inc. and Roy Skidmore:</u>

1.    Illinois Central Railroad Systems Operating Practices;

2.    Illinois Central Railroad Operating Rules;

3.    Illinois Central Gulf Railroad Damaged Car Report by J.A. Brumfield;

4.    Property loss report regarding incident prepared by Terry Pierce;

5.    Photographs taken at the accident scene by Dwight Arpin;

6.    Illinois Central Railroad Personal Injury Report on incident by Kirk Richard;

7.    Illinois Central Report of Highway Crossing Accident on incident;

8.    Illinois Central Report of Highway Crossing Accident involving Willie McNeal, dated

September 25, 1999;

9.    Bogalusa Police Department report on incident;

10.    Accident report prepared by Gaylord/Vinson Security dated 11/17/99;

11.    Accident report prepared by Gaylord/Vinson Security dated 2/26/96;

12.    Accident report prepared by Gaylord/Vinson Security dated 8/25/98;

13.    Accident report prepared by Gaylord/Vinson Security dated 9/25/99;

14.    Accident report prepared by Gaylord/Vinson Security dated 9/18/2000;

15.    Independent Medical Examination report of Dr. David Aiken;

16.    The train consist, respot or switch lists at the time of the accident;

17.    Gaylord Container Corporation Bogalusa mill listing 9/25/99;

18.    Illinois Central timetable in effect at time of accident;

19.    Medical records and films of Dr. Bruce Razza;

20.    Medical records and films of Dr. R. Vaclav Hamsa;

21.    Videotape of Kirk Richard's knee surgery.

22.    Medical records and films of Dr. K. E. Vogel;

23.    Medical records and films of Dr. Charles Aprill and/or Magnolia Diagnostics, Inc.;

24.    Medical records and films from Bogalusa Community Medical Center;

25.    Medical records and films from Northlake Physical Therapy & Rehabilitation Services;

26.    Medical records and films from Doctors Hospital;

27.    Medical records and films from Memorial Medical Center;

28.    Medical records and films from Kenner Regional Medical Center;

29.    Medical records and films from Lakeview Regional Medical Center;

30.    Medical records and films from American Orthopaedics;

31.    Medical records and films of Dr. Kevin Darr;

32.    The CN/IC personnel file of Kirk Richard;

33.    Records from the St. Tammany Fire Protection District;

34.    Sidetrack agreements between CN/IC and Gaylord Container dated November 7, 1986, March 23, 1987 and February 27, 1981;

35.    Photographs dated September 25, 1999, obtained from CN/IC in discovery;

36.    Illinois Central Railroad Company Safety Rule Book;

37.    Illinois Central Railroad Company System Air Brake and Train Handling Rules;

38.    Any and all records from the case styled *Kirk A. Richard v. Paul A. LeBlanc,* No. 96-12941 in the 22nd JDC for the Parish of St. Tammany , including but not limited to Mr. Richard's deposition dated June 2, 1997, other depositions taken in the matter, discovery responses, pleadings, and any medical records from the proceeding;

39.    Any exhibit introduced and/or used by any other party at trial;

40.    Illinois Central's responses to interrogatories;

41.    Illinois Central's responses to request for production;

42.    Plaintiff's responses to interrogatories;

43.    Plaintiff's responses to request for production; and

44.    Plaintiff's IRS, social security and earnings records.

c)    By defendant, Canadian National/Illinois Central Railroad Company:

1.    Gaylord accident report dated 9/25/99;

2.    CN/IC damaged car report;

3.    CN/IC report of inspection dated 9/27/99;

4.    K. A. Richard's personal injury report of 9/25/99;

5.    CN/IC agreement(s) for financial assistance/loan executed by plaintiff reflecting lien/set-off;

6.    CN/IC and IC Hospital Association records reflecting medical payments made for and on behalf of plaintiff as a result of the alleged incident;

7.    Map, plat, diagram and/or aerial photograph of the Gaylord Container Corporation plant at Bogalusa, Louisiana;

8.    CN/IC Operating Rules in effect on the subject incident date;

9.    Photograph of the involved vehicles and accident area taken on the accident date by representatives of Gaylord;

10.    CN/IC and Gaylord switch and respot lists evidencing the train's consist at the time of the collision;

11.    Photographs of the accident scene and vehicles obtained on the accident date by R. J. McCormick;

12.    Conductor's report of accident, completed on 9/25/99 by R. E. Pigott;

13.    Any exhibit listed or offered by any other party to this action.

d)    <u>By intervenor, Michael Hingle and/or Michael Hingle & Associates</u>

Copies of invoices, checks, employment contract, and/or other documentation of fees, costs, loans, medical expenses, etc., expended during the handling of this case, unless same is stipulated to by the parties.

Intervenor reserves the right to supplement and/or amend this list of exhibits.

## XI.    DEPOSITION TESTIMONY:

All parties reserve the right to use any deposition taken in this matter for any purpose allowed under the Federal Rules of Civil Procedure. Submission of depositions will be in compliance with the Court's standing orders.

Plaintiff, Kirk Richard, will introduce the deposition testimony of Roy Skidmore and any other witness who is not subject to subpoena power.

The Arnold defendants will introduce the deposition of Dr. Barugar Ravi and may introduce the deposition testimony of any witness who is unavailable or not subject to subpoena power. Arnold will use the plaintiff's deposition in the present matter and his deposition taken in other personal injury litigation.

CN/IC does not contemplate offering the testimony of any witness by deposition. It reserves the right to do so, should any witness whose deposition has been taken prove unavailable for trial. It also reserves the right to use any deposition herein taken for impeachment purposes.

Intervenor Michael Hingle and/or Michael Hingle & Associates, LLC, does not anticipate using at trial any deposition testimony other than, possibly, the deposition testimony of any witness residing outside the subpoena power of this Court or any witness who otherwise cannot attend the trial and possibly deposition testimony for impeachment, inconsistent statements and/or rebuttal.

## XII.    CHARTS, GRAPHS, MODELS:

All parties reserve the right to use charts, graphs, models, schematic diagrams and similar objects in opening statements or closing arguments. Any use of such items will be in compliance with the Court's standing orders.

Arnold anticipates using a number of demonstrative exhibits regarding plaintiff's medical treatment, including charts, photographs, illustrations and enlargements.

CN/IC does not expect to use any such demonstrative aid, except it may use enlargements of any of its aforesaid exhibits (or excerpts) and it may use a chart incorporating the opinions of its train braking dynamics expert, Professor Robert A. MacRae, regarding speeds and distances. It reserves the right to use any demonstrative aid used or listed by any other party to this action.

## XIII.  **WITNESSES:**

a)      <u>By plaintiff, Kirk Richard:</u>

Plaintiff **will call** the following witnesses:

1.      Kirk Richard, plaintiff
        114 Woodhill Loop
        Slidell, Louisiana 70461

        To testify regarding the facts surrounding the accident of September 25, 1999, his prior medical and health records; his prior earning record; the injuries sustained by him in the accident; the affects of the injuries on his personal and work-life and his medical treatment;

2.      Dr. Bruce Razza, orthopaedic surgeon
        American Orthopaedic Spine and Sports
        1201 S. Clearview Pkwy., Suite 140
        Jefferson, Louisiana 70121

        To concerning the orthopaedic treatment and evaluation rendered to complainant following his accident and his opinion of any residual affect of the injury;

3.      Dr. Kenneth Vogel, neurosurgeon
        2912 Canal Street
        New Orleans, Louisiana 70119

        To testify concerning the neurosurgical treatment in evaluation rendered to plaintiff following his accident and his opinion of any residual affect of the condition;

4.      Randy Pigott
        1057 Hudson Road
        Summit, Mississippi 39666

Who will testify regarding the facts and circumstances surrounding the accident;

Plaintiff **may call** the following witnesses:

5.     Roy Skidmore
       403 B-Kearly Drive
       Hallsville, Texas 75650

       Who will testify regarding the facts and circumstances surrounding the accident;

6.     George Lawson
       P. O. Box 451
       Franklinton, Louisiana 70438

       Who will testify regarding the facts and circumstances surrounding the accident;

7.     Dr. R. Vaclav Hamsa orthopaedic surgeon
       American Orthopaedic Spine and Sports
       1201 S. Clearview Pkwy., Suite 140
       Jefferson, Louisiana 70121

       To concerning the orthopaedic treatment and evaluation rendered to complainant
       following his accident and his opinion of any residual affect of the injury;

8.     Terry Pierce, investigating officer

       Who will testify regarding the facts and circumstances of this accident;

9.     Any witness listed by any other party.

b)     By defendants, Arnold Transportation Services, Inc. and Roy Skidmore

Defendants will call Dr. David W. Aiken, Jr.

Defendants may call the other listed witnesses.

1.     Roy Skidmore, 403 B-Kearly Drive, Hallsville, Texas 75650, (903) 668-4691- - Mr.
       Skidmore is excepted to testify regarding the incident in question.

2.     Kirk Richard, 4056 Ole Miss Drive, Kenner, Louisiana, (504) 466-0157 - - Mr. Richard
       is expected to testify regarding the incident and his alleged damages.

3.     Randy Eugene Pigott, 1075 Hutson Road, Summit, Mississippi, (601)276-3795–Mr.
       Pigott is expected to testify regarding the incident in question and prior incidents on the

Gaylord property.

4.    George Lawson, P.O. Box 451, Franklinton, Louisiana 70438 - - Mr. Lawson is expected
to testify regarding the incident in question and prior incidents at the Gaylord facility.

5.    O. Frank Griffith, 2335 Jay Street, New Orleans, Louisiana 70122. (504) 283-7811 - -
Mr. Griffith is an expert expected to testify on the matters contained in his expert report,
previously provided.

6.    Murt Seal, Jr., 826 Avenue I, Bogalusa, Louisiana 70427, (504) 735-6465 - - Mr. Seal is
expected to testify regarding prior incidents and safety concerns on the Gaylord property.

7.    Terry Pierce, 59408 Peach Orchard Road, Bogalusa, Louisiana 70427 (504) 732-3778 - -
Mr. Pierce is expected to testify regarding the incident in question and prior incidents and
safety on the Gaylord facility.

8.    Dwight Arpin, P.O. Box 73410, Metairie, Louisiana 70033, (504) 887-1516 - - Mr. Arpin
is expected to testify regarding the incident in question and photographs taken at the
scene.

9.    Dr. David Aiken, 4224 Houma Boulevard, Suite 650, Metairie, Louisiana 70006, (504)
456-5152 - - Dr. Aiken has been tendered as expert and he will testify as to the matters
set forth in his previously produced expert report.

10.   D. Ray Phelps, c/o Bogalusa Police, 214 Arkansas Avenue, Bogalusa, Louisiana 70427 -
- Officer Phelps is expected to testify regarding his investigation of the accident.

11.   Dr. Kevin Darr, Lakeview Regional Medical Center, 95 East Fairway Drive, Covington,
Louisiana 70433 - - Dr. Darr is expected to testify regarding the injuries sustained by
Kirk Richard and his previous motorcycle accident.

12.   Dr. Jay DeSalvo, Lakeview Regional Medical Center, 95 East Fairway Drive, Covington,
Louisiana 70433 - - Dr. DeSalvo is expected to testify regarding the injuries sustained by
Kirk Richard and his previous motorcycle accident.

13.   Dr. Mitchell Massey, Bogalusa Medical Center, 433 Plaza, Bogalusa, Louisiana 70427,
(504) 732-7122 - - Dr. Massey is expected to testify regarding Kirk Richard's physical
condition following the accident in question.

14.   Dr. Barugar Ravi - - Bogalusa Medical Center, 433 Plaza, Bogalusa, Louisiana 70427- -
Dr. Ravi is expected to testify by deposition regarding Richard's physical condition
following the accident.

15.   Dr. Richard Hages, 6601 Veterans Boulevard, Suite 39, Metairie, Louisiana 70003 - - Dr.
Hages is expected to testify regarding prior treatments and injuries sustained by Kirk
Richard.

16.    T.A. Provence, 3375 High Prairie, Grand Prairie, TX 75050 – Mr. Provence is expected to testify regarding Arnold's post accident investigation.

17.    Rick LeDay, 3375 High Prairie, Grand Prairie, TX 75050. Mr. LeDay is expected to testify regarding Arnold's post accident investigation.

18.    John Tate, 1101 Glen Lock Drive, Irving, TX 75062. Mr. Tate is expected to testify regarding Arnold's post accident investigation.

19.    R.A. MacRae, 1500 7th Avenue N.E., Jacksonville, Alabama – Professor MacRae may provide testimony on train dynamics, and train braking and speed.

20.    Custodian of Records for Northlake Physical Therapy & Rehabilitation Services, 2659 N. Causeway Boulevard, Mandeville, Louisiana 70471, (504) 893-0778 - - The custodian is expected to authenticate medical records.

21.    Custodian of Records for Memorial Medical Center, 301 N. Jefferson Davis Parkway, New Orleans, Louisiana 70119 - - The custodian is expected to authenticate medical records.

22.    Custodian of Records for Bogalusa Community Medical Center, 433 Plaza, Bogalusa, Louisiana 70427 - - The custodian is expected to authenticate medical records.

23.    Custodian of Records for Kenner Regional Medical Center, 180 W. Esplanade Avenue, Kenner, 70065 - - The custodian is expected to authenticate medical records.

24.    Custodian of Records for Lakeview Regional Medical Center, The custodian is expected to authenticate medical records.

25.    Custodian of Records for Dr. Kevin Darr, 95 E. Fairway Drive, Covington, Louisiana 70433, (504) 867-3800 - - The custodian is expected to authenticate medical records.

26.    Custodian of Records for Doctors Hospital, 4320 Houma Boulevard, Metairie, Louisiana 70006 - - The custodian is expected to authenticate medical records.

27.    Custodian of Records from the St. Tammany Fire Protection District, 709 Gerard Street, Mandeville, Louisiana 70448 - - The custodian is expected to authenticate records.

28.    Custodian of Records for Dr. Richard Hages, 6601 Veterans Boulevard, Suite 39, Metairie, Louisiana 70003 - - The custodian is expected to authenticate medical records.

29.    Custodian of Records for Dr. Bruce Razza, Dr. R. Vaclav Hamsa, and/or American Orthopaedic, 1201 S. Clearview Parkway, Suite 140, Jefferson, Louisiana 70121, (504) 733-0211 - - The custodian is expected to authenticate medical records.

30. Custodian of Records of Dr. Charles Aprill or Magnolia Diagnostics, 2700 Cadiz Street, New Orleans 70115, (504) 891-1975 - - The custodian is expected to authenticate medical records.

31. Any witness needed to authenticate any documents that cannot be agreed to by stipulation.

32. Defendants reserve the right to name any other witness if another party is permitted to add additional witnesses.

33. Any witness listed, subpoenaed or called by any other party.

c)    By defendant, Canadian National/Illinois Central Railroad Company:

1.    R.J. McCormick (Will Call)
      Risk Manager, CN/IC
      P.O. Box 10500
      New Orleans, Louisiana

(To authenticate documents, photographs and exhibits, to testify as to his conversations with the parties involved, including plaintiff, and to testify as to his investigation into the incident.)

2.    Keith Hancock (May Call)
      Supervisor of Locomotive Engineers
      1128 South Yard Road
      McComb, Mississippi

(To testify as to locomotive engineer competency testing, event recorder rules and policies, CN/IC rules, operating and switching procedures and to testify as to his observations at the accident scene.)

3.    PFC D. Ray Phelps (May Call)
      C/O Bogalusa City Police
      Bogalusa, Louisiana

(To testify as to his investigation into the subject incident.)

4.    J. A. Brumfield (May Call)
      Mechanical Foreman/Yardmaster, CN/IC
      1300 Railroad Avenue
      Bogalusa, Louisiana

(To testify as to his inspection of the cars and locomotive involved in the accident and his observations at the scene, as well as to testify as to plant operations at Gaylord's facility in Bogalusa, and CN/IC's switching policies there.)

5.    Roy Skidmore (May Call)
      403B Kearly Drive
      Hallisville, Texas

(To testify as to his employment as a truckdriver for Arnold Transportation, including the safety and operational training he received, and to testify as to the facts of the collision as per his October 20, 2000 discovery deposition.)

6.    G.B. Lawson (May Call)
      CN/IC Locomotive Engineer
      P.O. Box 451
      Franklinton, Louisiana

(To testify as to the facts and circumstances of the accident, including his operation of the locomotive and of the train in question at the time of the accident, per his discovery deposition of October 11, 2000.)

7.    R.E. Pigott (May Call)
      CN/IC Conductor
      1057 Hudson Road
      Summit, Mississippi

(To testify as to the facts and circumstances of the accident, including his observations of the truck in question prior to and at the time of the collision, per his discovery deposition of October 11, 2000.)

8.    Plaintiff K.A. Richard (May Call as a "Hostile Witness")
      CN/IC Brakeman
      114 Woodhill Loop
      Slidell, Louisiana

(To testify as to the facts and circumstances of the accident, his injuries and treatment, and to identify documents, including loan/advancement receipt(s) and collective bargaining/health care contract benefits, etc., per his August 30, 2000 discovery deposition.)

9.    David W. Aiken, Jr., M.D. (May Call)
      4224 Houma Boulevard
      Metairie, Louisiana

(To testify as an expert regarding his independent medical evaluation of plaintiff per his timely exchanged narrative report.)

10.   Professor R. A. MacRae (May Call)
      1500 7th Avenue N.E.
      Jacksonville, Alabama

(To testify in accordance with his narrative report as an expert in train dynamics and train braking as to the train's pre-incident speed.)

      11.    Any witness called or listed by any other party.


d)    <u>By Intervenor, Michael Hingle and/or Michael Hingle & Associates</u>

    Will Call:

    1.    Michael Hingle

    May Call:

        Michael Hingle and/or other representative of Michael Hingle & Assoc.
        220 Gause Blvd., Suite 200
        Slidell, LA 70458

    Re: facts of discharge, amount and value of legal services rendered, medical expense, loans, costs advanced, expenses, etc.

    2.    Lee Fandal, Michael Hingle & Assoc.
        220 Gause Blvd., Suite 200
        Slidell, LA 70458

    Re: medical expense, loans, costs advanced, expenses, etc.

    3.    Heide B. Pellegrin, Michael Hingle & Assoc.
        220 Gause Blvd., Suite 200
        Slidell, LA 70458

    Re: work done on file.

    Intervenor may also call any witness listed by any other party or listed in any pretrial order, inserts or pleadings filed herein.

    Intervenor reserves the right to supplement and/amend this list of witnesses upon proper notice.

## XIV.  <u>TRIAL MODE</u>:

    This case is set as a jury trial on all aspects of the case, excepting the claims of intervenors, which are to be concurrently tried by the Court.

        A complete set of jury instructions and a complete set of jury interrogatories must be submitted on paper and on disk in

WordPerfect format. The instructions, interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on *voir dire* delivered to the Court and opposing counsel not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

**XV.    DAMAGES:**

The issue of liability will not be tried separately from those of quantum.

**XVI.    OTHER MATTERS EXPEDITING A DISPOSITION:**

None.

**XVII.    NUMBER OF TRIAL DAYS:**

The trial shall commence on the 25th day of June, 2001, at 8:30 a.m. A realistic estimate of the number of trial days required is two (2) to three (3) days.

**XVIII. FORMULATION OF PRE-TRIAL:**

This Pre-Trial Order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of this trial and may not be amended except by consent of the parties and the Court, or by Order by the Court to prevent manifest injustice.

**XIX.    SETTLEMENT:**

Possibility of settlement of this case has been considered.

New Orleans, Louisiana this _3 1st_ day of _May_____, 2001.

_____
**UNITED STATES DISTRICT JUDGE**

Respectfully submitted,

**SHEARMAN-DENENEA, L.L.C.**

By:

Brian G. Shearman, T.A. (#19151)
John H. Denenea, Jr. (#18861)
829 Baronne Street
New Orleans, LA 70113
Telephone: (504) 581-9322


**CHAFFE, MCCALL, PHILLIPS,
TOLER & SARPY, L.L.P.**

By:

John F. Olinde, T.A. (#1515)
Brent A. Talbot (#19174)
Douglas R. Holmes (#23996)
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000


**LEMLE & KELLEHER, L.L.P.**

By:

David S. Kelly, T.A. (#7703)
Timothy F. Daniels (#16878)
Robert S. Emmett (#23725)
601 Poydras St, 21st Floor
New Orleans, LA 70130
Telephone: (504) 586-1241

**MICHAEL HINGLE & ASSOCIATES, INC.**

By:_____
Michael Hingle/Guy Huard/W.M. Hingle
P.O. Box 1129
220 Gause Blvd.
Slidell, Louisiana, 70459
Telephone: (504) 641-6800

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this _29_ day of May, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the same by United States mail, properly addressed, and first class postage prepaid.